## SHARON vs. MOSHER.

In an action for the breach of a contract of warranty upon the sale of a horse, the measure of damages, as a general rule, is the difference in value between the horse as represented and his actual value.

So, in case of a simple *legal wrong*, committed without circumstances of fraud or willfulness, the plaintiff can only recover the damages necessarily resulting from the act complained of.

But when the wrong complained of is characterized by *fraud, malice*, or gross *carelessness*, the rule of damages should be extended, so as to embrace all damages which naturally flow therefrom.

Thus, where the defendant, upon the sale of a mare to the plaintiff, represented to him that she was perfectly gentle and kind, which representation was false, and in an action to recover damages for such false and fraudulent representation the plaintiff proved that within two days after the sale and purchase he attempted to drive the mare before a buggy, when she com-

Sharon *v.* Mosher.

menced running and kicking, and the buggy was broken, and the plaintiff, to save his life, sprung to the ground, and thereby broke one of his legs; *Held*, that evidence, offered by the plaintiff, to show the nature and extent of the injury to his leg; the length of time he was confined to his house, disabled from labor; the expenses necessarily incurred in effecting a cure; the permanent character of the injury to his limb; and as to the damage done to the buggy, should have been received; and that it should have been left to the jury to say, as a question of fact, whether such injuries resulted from the viciousness of the mare, and were the probable and natural consequences of the fraud practiced upon the plaintiff by the defendant.

THIS was an action to recover damages for the false and fraudulent representations made by the defendant, in the sale of a horse to the plaintiff. The plaintiff proved on the trial that he purchased a mare of the defendant, giving in exchange therefor a yoke of oxen and a silver lever watch valued at $80; that the defendant then and there represented, as an inducement to the trade, that the mare was perfectly gentle and kind; which representation he knew to be false. The plaintiff also proved that in two days after the trade he attempted to drive the mare before a buggy, when, without any apparent cause, she commenced running and kicking until the buggy was badly broken, and to save his life the plaintiff sprung to the ground, and in falling broke one of his legs. There was no evidence imputing negligence or want of skill in driving, to the plaintiff. The plaintiff then offered to show the nature and extent of the injury to his leg, the length of time he was confined to his house, disabled from labor; the expenses necessarily incurred in effecting a cure; the permanent character of the injury to his limb, affecting his capacity to labor up to the time of the trial; and also offered to prove the damage which the buggy had sustained by the kicking and running away of the mare. The defendant objected to the evidence, and the court sustained the objection; ruling that "the only measure of damages was the difference in value between the mare as recommended and her actual value." The plaintiff excepted.

The jury rendered a verdict in favor of the plaintiff for $35 damages. The plaintiff appealed to this court. The cause

was tried before Justice Pratt, at the Jefferson circuit, in September, 1852.

*E. B. Wynn,* for the plaintiff.

*T. C. Chittenden,* for the defendant.

*By the Court,* HUBBARD, J. This is an action to recover damages for *deceit* in the sale of a horse. The only question to be determined is as to the measure of damages allowable upon the facts presented in the bill of exceptions. The rule adopted on the trial, limited the recovery to the difference in value, between the mare as represented and her actual value. This is the well settled rule in case of a breach of contract of warranty, (*Cary* v. *Gruman,* 4 *Hill,* 625;) and also in a case of a simple *legal wrong,* committed without circumstances of fraud or wilfullness. (*Walrath* v. *Redfield,* 11 *Barb.* 368.) But when the wrong complained of is characterized by *fraud, malice* or *gross carelessness,* I think the rule of damages should be extended, so as to embrace all damages which *naturally flow* therefrom.

I think the evidence offered, to prove the injuries to the person of the plaintiff and to his vehicle, should have been received, and that it should have been left to the jury to say, as a question of fact, whether they resulted from the viciousness of the mare, and were the probable and natural consequences of the fraud practiced upon the plaintiff by the defendant. The accident occurred within a day or two after the trade, the very first time the plaintiff attempted to use the animal. Had the jury found for the plaintiff upon this question, we could not have disturbed the verdict as against the evidence.

I am aware that there are some authorities which apparently sustain the ruling at the circuit, confounding all distinction, whether fraud does or does not enter into the transaction. Such is the case of *Stiles* v. *White,* (11 *Met.* 356.) That was an action to recover damages for *deceit* in the sale of a horse. It is stated in the head note that "the measure of damages is the

Sharon *v.* Mosher.

same in an action for deceit *in* a sale, as in an action for breach of warranty *on* a sale, namely, the difference between the value of the article sold and the value of such an article as it was represented to be." The decision in the particular case was doubtless correct, but I think the general rule stated in the note quoted is unsound. The action was tort, and on the trial the court ruled " that the measure of damages would be the difference between the actual value of the horse sold, and the value of such a horse as this was represented to be, by the defendent." To this ruling the plaintiff did not except, but the defendants did, and it was upon his exception that the cause was argued before the supreme court. Wilde, J., in delivering the opinion of the court, speaking of the rule as adopted on the trial, says: " The defendants' counsel admitted that this was the well established rule in actions on the contract of warranty; and surely the defendants cannot claim a more favorable rule of damages, on the ground of their own fraud. The plaintiff was clearly entitled to such a horse, or the value of such a horse, as that sold to him by the defendants was by them represented to be." The court, it seems, simply decided that the defendants could not complain of the rule of damages adopted on the trial, that it was the lenient rule in actions on contract. The principle was not decided as stated in the note of the case, to wit, that the same measure of damages prevails " in an action for a deceit in a sale, as in an action for breach of a warranty on a sale." If the plaintiff had on the trial excepted to the ruling, and offered to prove special damages as the legitimate result of the deceit, then the same question would have arisen, which is presented here.

In the case of *Whitney* v. *Allaire,* (1 *Com.* 312,) Judge Gardiner, in his opinion, says: " The measure of damages in an action upon a warranty and for fraud in the sale of property is the same. In either case they are determined by the difference in value between the article sold and what it should be according to the warranty or representation." In a large class, and perhaps a majority of cases, this may be the true rule, and certainly was, as applied to the case before the court. But the proposition

Sharon *v.* Mosher.

should be modified or differently stated, I think, when it assumes the form of a general rule.

In the famous case of the diseased sheep, (*Jeffrey* v. *Bigelow*, (13 *Wend.* 518,) the damages were extended beyond the measure allowable for a mere breach of warranty of soundness. The plaintiff was allowed to recover, for the injury sustained by the communication of the contagion to his other flock. This was doubtless allowed upon the principle that, from the nature of the disease, the defendant might have anticipated its communication. See also *Evans Pothier, part* 1, *ch.* 2, *art.* 3, *pl.* 166, referring to a similar case of a distempered cow. The allowance of this species of special damage, is simply applying to a particular case the familiar elementary axiom, which holds a party committing a *willful injury* responsible for all the *natural or probable* consequences of his conduct. The law, for the purpose of remunerative justice, holds that the wrongdoer contemplated all such consequences. (2 *W. Black. Rep.* 892. *Guille* v. *Swan,* 19 *John.* 381. *Vandenburgh* v. *Truax,* 4 *Denio,* 464.)

In the case of *Dewint* v. *Wiltse,* (9 *Wend.* 325,) the damages were enhanced beyond the terms of the contract, for the *fraudulent breach* of the covenant. (*See also Nurse* v. *Barnes, Ld. Raym.* 77; *Blanchard* v. *Ely,* 21 *Wend.* 350.) It may be questionable how far this is sound law, where there is no fraud in the inception of the contract; and I only cite these authorities to show how little doubt there can be that, where fraud taints the whole contract, the wrongdoer should be held responsible for all the special damages traceable directly to his wrong.

As before remarked, in this case I think it should have been left to the jury, under the evidence given and offered, to say whether the special damages which were fully averred in the complaint were the *natural and probable consequence* of the fraud imputed to the defendant.

A new trial must be granted; costs to abide the event.